# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. CR406-009 |
| | ) |
| JAMES KEITH VEREEN, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Defendant has filed a motion to suppress all evidence seized following the stop of his vehicle on January 10, 2006. Docs. 13, 17. The Court held an evidentiary hearing on this matter on April 19, 2006, at which time testimony was offered by the government from Georgia State Patrol Trooper Joeseph Mock, Deputy Charlton Willoughby of the Chatham County Sheriff's Department, and Agent Stephen Tinsley of the DEA in Savannah. The defendant testified in his own behalf relating to the circumstances surrounding the traffic stop and search of his automobile. The Court also viewed a tape recording of the traffic stop that led to defendant's arrest. For the reasons that follow, it is recommended that the motion to suppress be DENIED.

## I. Background

On the afternoon of January 10, 2006, while conducting regular patrol on I-95 in Bryan and Chatham Counties, GSP Trooper Mock spotted a green Ford Expedition driven by defendant. Trooper Mock had earlier been alerted to be on the lookout for this particular vehicle, which was suspected of transporting illegal contraband. Trooper Mock was instructed not to stop the vehicle for this reason but to look for any traffic violations which might afford independent probable cause for stopping the vehicle. Traveling north along the interstate at precisely the posted speed limit of 65 mph, Trooper Mock kept defendant's vehicle under observation for approximately ten miles. At around 3:20 p.m., Mock observed defendant move from the right-hand lane into the center lane without giving a signal, and he then initiated a traffic stop of defendant's vehicle for failure to signal a lane change.

After approaching the vehicle, Mock asked for defendant's driver's license and explained the reason for the stop. Defendant was somewhat argumentative, claiming that he had given a signal. Defendant then volunteered that he had been stopped earlier in the day as he entered the State of Georgia for a seat belt violation, insinuating that the patrol was

harassing him. Mock then asked defendant to step to the rear of the vehicle, at which time GSP Trooper Cross arrived at the scene to assist Mock.[1]

Trooper Mock retrieved his warning book from his patrol car and informed defendant that rather than citing him for a traffic violation, he would issue defendant a warning for his improper lane change. While filling out the warning, Mock asked defendant for permission to search defendant's vehicle. When defendant responded "go ahead, you're going to anyway," Mock explained to him that this was not the case and that he was not going to conduct a search against defendant's will. Defendant then consented to the search. At this time, which was less than five minutes into the traffic stop, Trooper Mock opened the front passenger door and began to examine the vehicle.

By this point, Corporal Strickland and Captain McGlammery of the GSP had also arrived on the scene to assist. As Trooper Mock proceeded to inspect the vehicle, Captain McGlammery called Deputy Willoughby of the Chatham County Sheriff's Department's K-9 unit and requested the

---

[1] Mock testified that Cross was returning from a training program and stopped to assist when he saw Mock on the side of the interstate with defendant.

assistance of a drug dog to examine the automobile. Willoughby arrived on the scene with his drug dog shortly after this call. The dog alerted at several parts of defendant's car within five minutes of the initial traffic stop. Several "bricks" of cocaine were recovered from defendant's car, whereupon defendant was placed under arrest.

## II. Analysis

Defendant first argues that Trooper Mock lacked probable cause to initiate a traffic stop on his vehicle. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 809 (1996). The existence of probable cause depends purely on the objective facts available to the officer. "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Id. at 813. For this reason, the Supreme Court has rejected the notion that a traffic stop based on probable cause is constitutionally permissible only if a reasonable officer "would have" made the stop solely for the purpose of enforcing the traffic laws. Id. at 813-15; see Riley v. City of Montgomery, 104 F.3d 1247, 1252

(11th Cir. 1997) (holding that the constitutional reasonableness of a traffic stop is determined irrespective of the intent of the individual officer or a theoretical "reasonable officer"). Therefore, "a police officer may stop a vehicle '[w]hen there is . . . probable cause to believe the driver is violating any one of a multitude of applicable traffic and equipment regulations' relating to the operation of motor vehicles." United States v. Strickland, 902 F.2d 937, 940 (11th Cir. 1990) (quoting Delaware v. Prouse, 440 U.S. 668 (1979)). It matters not that the officer may also harbor some other reason or purpose for making the stop.

The Court credits Trooper Mock's testimony that he witnessed defendant fail to signal a lane change when defendant maneuvered from the right-hand lane of I-95 into the center lane.[2] At the time he observed defendant make this maneuver, Mock was traveling in the far left-hand lane just behind defendant's vehicle, and he was in a perfect position to observe whether a signal had been given. Although defendant disputed the reason for the stop, claiming that he had used a turn signal, Mock was entitled to

---

[2]The defendant testified that he was aware of the trooper's presence on the roadway and was therefore careful to give a signal before changing lanes. The Court has considered this testimony but finds the trooper's testimony to be more credible on this point.

discount this explanation, since it conflicted with his own observations.

Under Georgia law, a signal of intention to change lanes is required when necessary to alert other drivers. See O.C.G.A. § 40-6-123(b); Bowers v. State, 473 S.E.2d 201 (Ga. App. 1996) (driver required to give signal to change lanes when other cars are present on roadway and need notice of driver's intent to change lanes). As demonstrated by the videotape, the traffic on I-95 on the day of the traffic stop was rather heavy, and given the proximity of the trooper's patrol vehicle at the time of the lane change, it is clear that a turn signal was required under these circumstances. Since no such signal was given, the trooper's stop of defendant's vehicle was proper.

An officer may request consent to search a vehicle during the course of a routine traffic stop. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973); U.S. v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001). In order for consent to be valid, it must be voluntary — that is, it must be the product of a free and unconstrained choice. Schneckloth, 412 U.S. at 227. In evaluating whether consent was voluntary, the court must consider the totality of the circumstances surrounding the consent, including factors

such as (1) the presence of coercive police procedures; (2) the extent of defendant's cooperation with the officer; (3) defendant's awareness of his right to refuse consent; (4) defendant's education and intelligence; and (5) defendant's belief that no incriminating evidence will be found. United States v. Simms, 385 F.3d 1347, 1355 (11th Cir. 2004), *cert. denied*, 544 U.S. 988 (2005).

While he was writing defendant a warning for the traffic violation, Trooper Mock asked defendant if he could search his car. Initially, defendant responded "go ahead, you're going to anyway." Mock, however, informed plaintiff that he was not going to search defendant's vehicle without his express permission. Defendant then gave his consent to the search.[3] The credible testimony at the evidentiary hearing establishes that Mock did not engage in any coercive police practices or put any pressure on defendant to cooperate. Mock simply asked defendant to step to the back of his vehicle and asked for consent to search the vehicle while he was writing defendant a warning. Defendant consented to the search after Mock explained to him that there would be no search of the car without

---

[3]The Court has considered, but rejects as not credible, defendant's testimony that he refused to give his consent.

defendant's unambiguous consent, thus plainly indicating to defendant that he was free to refuse consent. Finally, defendant seemed to believe that no incriminating evidence would be found, for he told Mock that during a previous traffic stop that day a search of the car had yielded no contraband. Thus, it appears defendant did not expect anything to be found during this search either. All of these factors support a finding that defendant voluntarily gave consent to Mock to search his vehicle.

Defendant contends that the search of his car was illegal because it occurred outside the scope of a routine traffic stop. Doc. 17. While a dog sniff performed during a routine traffic stop does not violate the Fourth Amendment, "a seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Illinois v. Caballes, 543 U.S. 405, 407 (2005). There the Supreme Court held that a dog sniff of a vehicle does not infringe a person's constitutionally protected interest in privacy and therefore does not change the character of a traffic stop that is "lawful at its inception and otherwise executed in a reasonable manner." Id. at 408. Any intrusion on privacy expectations occasioned by a dog sniff

8

performed on the exterior of a vehicle while the driver is lawfully seized for a traffic violation "does not rise to the level of a constitutionally cognizable infringement." Id. at 409. Thus, "a dog sniff conducted during a lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." Id. In considering whether the duration of a stop is constitutional, courts examine the time that elapsed between the initial stop and the time the officer obtained consent to search. United States v. Purcell, 236 F.3d 1274, 1279 (11th Cir. 2001); United States v. Hernandez, 418 F.3d 1206, 1210 (11th Cir. 2005). The Eleventh Circuit, addressing the length of a constitutional stop, has stated that "[w]here at its inception, a traffic stop is a valid one for a violation of the law, we doubt that a resultant seizure of no more than seventeen minutes can ever be unconstitutional on account of its duration: the duration is too short." Hernandez, 418 F.3d at 1212 n.7.

A video camera mounted on the dash of Trooper Mock's patrol car was activated when he turned on the blue lights to initiate the traffic stop. In this case, either the camera or the tape malfunctioned in some way,

resulting in a tape that was blurred and without audio. However, the tape clearly shows the duration of the stop, and it is particularly helpful in determining at what point defendant exited his vehicle and when the drug dog arrived at the scene and alerted on the car. The tape shows that approximately five minutes elapsed from the time defendant was pulled over until the dog arrived. A few seconds later, the dog alerted. It is clear from the videotape that no unreasonable extension of the traffic stop occurred in this case in order to secure the presence of the drug dog. Indeed, defendant had previously given his consent to Trooper Mock for a search of his vehicle. Once the dog alerted on defendant's car, the officers also had probable cause to conduct a search of the vehicle. Thus, the cocaine recovered from defendant's vehicle was lawfully discovered and presents no constitutional violation.

### III. Conclusion

The record reveals that defendant was lawfully stopped for violating a provision of the Georgia Motor Vehicle Code which required him to signal a lane change on a busy interstate highway. During the course of that stop,

defendant freely and voluntarily consented to a search of his car, and before that search was completed, a drug dog alerted on the vehicle. The subsequent search of defendant's vehicle revealed a large quantity of cocaine. This search was constitutional and the contraband is not the "fruit of the poisonous tree" as defendant contends. Defendant's motion to suppress should therefore be DENIED.

**SO REPORTED AND RECOMMENDED** this 27th day of April, 2006.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA